**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERTO AVIÑA, | Case No. 1:25-cv- 1665 JLT EGC |
| Plaintiff, | ORDER GRANTING MOTION TO REMAND |
| v. | (Doc. 6) |
| LEW THOMPSON & SON TRUCKING, INC., et al., | |
| Defendants. | |

Lew Thompson & Son Trucking removed this wage and hour lawsuit from the state superior court under the Class Action Fairness Act.  It has not carried its burden to show that the amount in controversy is greater than the jurisdictional threshold, however, so Plaintiff Roberto Aviña's motion to remand is **GRANTED**.

**BACKGROUND**

Aviña asserts several claims against Lew Thompson and a second defendant, Covenant Transport LLC, under the California Labor Code and the Business and Professions Code.  (*See* Docs. 1 at 3; 1-7 at 4.)  He alleges Lew Thompson and Covenant did not pay him and other employees at least minimum wages for all of the time they worked, did not compensate them at overtime rates when they worked more than eight hours in a day or more than forty hours in a week, did not permit them to take meal breaks and rest breaks, and did not reimburse them for

1

business expenses, among other similar allegations.  (*See id.* at 14–25.)

Aviña filed this case as a proposed class action in Merced County Superior Court in October 2025.  (*See id.* at 1.)  Lew Thompson removed the case to this Court based under CAFA the next month.  (*See* Doc. 1 at 2.)  It alleged that the two defendant companies are citizens of Arkansas and Tennessee, that Aviña is a citizen of California, that the proposed class includes more than 100 members, and that the complaint puts more than $5 million in controversy.  (*See id.* at 4–14.  Covenant had not been served when Lew Thompson removed the case, so it did not join in the removal, but Covenant would have joined if it had been served.  (*See* Doc. 1 at 3.)

Aviña does not allege in his complaint that he is seeking any particular amount of money on behalf of the proposed class, nor that the proposed class includes a particular number of people.  Lew Thompson relied on its own employee records to support its allegations about the number of people in the proposed class.  (*See id.* at 6.)  Lew Thompson also relied on its employee records to support its allegations about the amount in controversy, and it drew on Aviña's allegations.  (*See id.* at 7–14.)  It estimated that just a few of Aviña's claims—those related to overtime pay, meal breaks, and rest breaks—put more than $7 million in controversy.  (*See id.* at 9–11.)  In total, after adding other estimates related to potential statutory penalties, Lew Thompson alleged that more than $8.8 million was at stake.  (*See id.* at 14.)  Lew Thompson did not include any dollar-value estimates about Aviña's other claims, such as his claims about unpaid wages and unreimbursed business expenses.  (*See id.* at 14.)  Nor did Lew Thompson include any specific allegations about the amounts of attorneys' fees and costs that might be at stake.  (*See id.*)  It "reserved the right to quantity these amounts based on the allegations in the Complaint if necessary."  (*Id.*)

Aviña now moves to remand the case to the state superior court.  He argues Lew Thompson's estimates of the amount in controversy are unreasonably high, do not match his own experiences as an employee, and are based on speculation.  (Doc. 6.)  He does not dispute, however, that the proposed class includes more than 100 people, nor that he and the defendants are from different states.  (*See id.*)  Lew Thompson opposes the motion.  (Doc. 8.)  It found an error in one of its estimates, but it corrected that error and stands by its broader allegations about

2

the amount in controversy.  (*Id.* at 12–19.)  Lew Thompson also bolstered its allegations with a few previously undisclosed estimates of the potential value of Aviña's claims related to minimum wages, liquidated damages, unreimbursed business expenses, and attorneys' fees.  (*See id.* at 19–22.)  Aviña filed a reply, and the Court took the motion under submission without hearing oral arguments.  (*See* Docs. 9, 10.)

**STANDARD OF DECISION**

Federal law allows a defendant to remove a case from a state court to the appropriate federal district court if that court would originally have had jurisdiction.  28 U.S.C. § 1441(a).  To accomplish the removal, the defendant must file a notice in the federal district court, which must contain among other things "a short and plain statement of the grounds for removal."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).  It is not necessary for the defendant to submit evidence with this notice.  Plausible allegations suffice.  *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019)).

If the plaintiff later contests the defendant's allegations about the amount in controversy, as Aviña does in this case, then that defendant must prove "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million," i.e., that the amount in controversy is more likely to exceed the $5 million threshold than to fall short of it.  *Ibarra v. Manheim Investment, Inc.*, 774 F.3d 1193, 1197 (9th Cir. 2015).  The defendant can, for example, offer declarations, exhibits, and other "summary-judgment-type evidence."  *Id.*  A defendant can also rely on reasonable assumptions, including those based on the plaintiff's own allegations.  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020); *Arias*, 936 F.3d at 926–27.  It may not rely on speculation or conjecture, however, nor assumptions "pulled from thin air."  *Ibarra*, 775 F.3d at 1197.  An assumption must have "some reasonable ground" beneath it.  *Id.*  Plaintiffs may respond by submitting their own evidence in reply, or by arguing the defendants' assumptions are not unreasonable.  *See Harris*, 980 F.3d at 699.  The court then weighs the evidence, considers whether the defendant's assumptions are reasonable, and decides whether the amount in controversy is more likely to exceed the jurisdictional threshold than to fall short of it.  *See id.* at 701.

3

The question the court must answer is not whether the plaintiff will probably recover any particular amount of money or secure some particular injunction. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Courts cannot demand that a defendant predict the "eventual award with one hundred percent accuracy." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)). Nor is the goal to reach some "prospective assessment of the defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010). The amount is controversy "is simply an estimate of the total amount in dispute." *Id.* If the defendant shows that value is more likely to exceed $5 million than otherwise, it has carried its burden. *See id.*

## DISCUSSION

Lew Thompson has not carried its burden. First, it has relied on several theories and arguments about the amount in controversy that it did not include in its notice of removal. Lew Thompson has not explained why it did not include all of its current arguments and estimates in its notice of removal. It appears to have simply held some arguments in reserve. The Court will not entertain them now. Doing that would not only be unfair to Aviña; it would also permit a late amendment to the notice of removal. *See Mohammed v. Am. Airlines, Inc.*, No. 19-01540, 2019 WL 5887105, at *5 (N.D. Cal. Nov. 12, 2019) (rejecting defendant's similar invitation to consider "additional causes of action" when calculating the amount in controversy).

Many of Lew Thompson's assumptions are also based on guesswork rather than reasonable interpretations of the complaint. This is most clearly apparent when its estimates are reviewed claim by claim.

### A.    Meal and Rest Breaks

To estimate the amount in controversy for Aviña's claims about missed meal and rest break, Lew Thompson assumes employees never had uninterrupted meal breaks, and it assumes they missed at least one rest break every day. (*See* Doc. 8 at 12–16.) It relies on four allegations to support this assumption.

First, it cites Aviña's allegation that its actions were part of general set of "policies" or "practices" that applied to all employees (Doc. 1-7 at 4). But it is well known that "a 'pattern and

4

practice' of doing something does not necessarily mean always doing something." *Ibarra*, 775 F.3d at 1198–99.

Second, Lew Thompson cites Aviña's allegation that "Defendants required Employees to keep their cell phone on during their meal breaks and respond to them resulting in on-duty and interrupted meal periods." (*Id.* at 9). Phones do not interrupt breaks if they sit silently in a pocket. Lew Thompson does not cite any allegations or evidence about how often employees' breaks were actually interrupted by calls or text messages.

Third, Lew Thompson cites Aviña's allegation that "Defendants required Employees to record exactly thirty minutes for their meal periods regardless of whether the meal period was exactly thirty minutes" (*Id.*). A policy of submitting inaccurate timesheets might show that Lew Thompson's timekeeping records are not to be trusted, but it does not show how often meals were actually shorter than thirty minutes. Some breaks might have been longer than thirty minutes. The complaint does not say, and Lew Thompson has not identified any allegations or evidence that could shed light on this uncertainty.

Fourth, Lew Thompson cites Aviña's allegation that he and other employees "were unable to take all the rest breaks they were entitled to due to their work loads." (Doc. 1-7 at 9–10). In Lew Thompson's reading, this allegation means employees could not take any rest breaks. (*See* Doc. 8 at 14.) If Aviña had intended to allege that no employees were never permitted to take a duty-free break, he would have written exactly that, i.e., "employees were unable to take any of the rest breaks they were entitled to." Instead, he wrote that employees could not take "all the rest breaks they were entitled to." In other words, they missed some rest breaks. Not all.

Aviña's allegation that Lew Thompson had a common "policy" or "practice" that deprived employees of duty-free breaks does support the assumption that he will ultimately attempt to prove at trial that employees missed one or maybe two meal and rest breaks per week on average. *See Jimenez v. Land O'Lakes, Inc.*, No. 23-00891, 2025 WL 2992313, at *6 (E.D. Cal. Oct. 24, 2025) (collecting authority). This would lead to an estimate of about $1.7 million for the amount in controversy at the very most.[1]

---

[1] Four breaks per week × $26.75 in penalties per break × 15,747 workweeks = $1,684,929.

**B.      Overtime Wages**

Lew Thompson relies on three passages in the complaint to estimate the amount that Aviña's overtime wage claims put in controversy.  First, it cites Aviña's allegation that employees "were required to work during their meal and rest breaks" without compensation, leading to work in excess of eight hours per day or forty hours per week.  (Doc. 8 at 16–17 (citing Doc. 1-7 at 6, 8).)  Second, it cites Aviña's allegation that employees "were regularly required to work for more than 10 hours in a given shift without receiving a second thirty (30) minute meal period."  (*Id.* at 17 (citing Doc. 1-7 at 18).)  Third, it cites Aviña's allegation that employees were not paid for the time they "spent working off-the-clock by completing and dropping off their paper time sheets."  (*Id.* (citing Doc. 1-7 at 6.)  Based on these allegations, Lew Thompson assumed that employees worked off the clock for an hour every day.  That is not a reasonable assumption.  As explained above, Aviña's allegations do not imply that employees missed every meal break, not that they missed at one or more rest breaks every day, for years.  Aviña's allegations do not specify how many days per week plaintiffs worked overtime, and it is unreasonable to assume that employees filled out time sheets for half an hour to an hour every single day.

Lew Thompson's estimates also conflict with Aviña's own experience.  He recalls spending only "about twenty minutes once per week performing work while clocked out for meal periods" and "about five minutes off-the-clock every day completing and submitting [his] time sheets."  (Doc. 6-3 at 2.)  Lew Thompson argues it would be inappropriate to take Aviña's recollections into account because "jurisdiction is determined at the time of removal, and a plaintiff cannot defeat CAFA jurisdiction through post-removal attempts to minimize damages."  (Doc. 8 at 18 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).)  Aviña's recollections are a description of the world at the time of removal, not after.  He describes events that occurred long before the case was removed, so admitting his declaration would not run afoul of the rule that jurisdiction is determined at the time of removal.  The Supreme Court and the Ninth Circuit have also both held expressly that "both sides" may submit evidence to support their claims about the amount in controversy.  *Dart Cherokee*, 574 U.S. at 88;

*Harris*, 980 F.3d at 699.

At most, based on Aviña's allegations that employees "regularly" worked more than ten hours per day without a second meal break, that employees filled out timesheets after hours without pay, and that Lew Thompson had a common "practice" or "policy" of depriving employees of their meal and rest breaks, it would be reasonable to assume that employees worked overtime without pay for a few minutes per day, i.e., up to an hour per week on average. This would lead to an estimate of about $632,000 in controversy.[2]

### C.    Other Amounts

It was reasonable for Lew Thompson to assume that Aviña is seeking the maximum available "waiting time" and wage statement penalties for each member of the class over the whole of the proposed class period. (*See* Doc. 8 at 18–19.) These allegations put an additional $597,060 and $466,350 in controversy, respectively. (*See id.*)

As noted above, Lew Thompson offered some estimates for the first time in opposition to Aviña's motion. These newly disclosed estimates relate to unpaid minimum wages, liquidated damages, unreimbursed business expenses, and attorneys' fees. The Court will not add these estimates to the total but notes for purposes of a creating a clear and complete record that they would fall short of the jurisdictional threshold in any event.[3]

Some of Lew Thompson's new estimates are also based on guesswork, not reasonable assumptions. That is true most clearly of its estimate of unreimbursed business expenses and potential attorneys' fees. It is impossible to make any alternative estimate or assumption on this record without resorting to speculation. For that reason, it would be appropriate to reduce them to zero even if Lew Thompson had included them in its notice of removal. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) ("Where a defendant's

---

[2] One hour per week × $40.13 overtime pay per hour × 15,747 workweeks = $631,927.11.

[3] $1,684,929 for meal and rest breaks + $631,927.11 for unpaid overtime wages + $597,060.00 in waiting time penalties + $466,350.00 in wage statement penalties = $3,380,266.11, approximately $1.6 million below the $5 million threshold. Lew Thompson's new estimates include $210,616 in unpaid minimum wages, $210,616 in liquidated damages, $78,735 in unreimbursed business expenses, and a 25% benchmark attorneys' fee. *See* Doc. 8 at 21–22. Adding these amounts would lead to an estimate of about $4.85 million in controversy.

assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden."); *Fritsch v. Swift Transportation Co. of Arizona,* LLC, 899 F.3d 785, 796 (9th Cir. 2018) ("[T]he defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation.").

**CONCLUSION**

Lew Thompson has not carried its burden to show that more than $5 million is in controversy.  The court lacks jurisdiction under § 1332(d).  The motion to remand (Doc. 6) is **GRANTED**.  This action is **REMANDED** to the Merced County Superior Court.

IT IS SO ORDERED.

Dated:   **May 22, 2026**

UNITED STATES DISTRICT JUDGE